FILED
2010 Aug-30  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **FREIDA DEAN BROOKS,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | Case No. CV-09-S-2261-E |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Freida Dean Brooks, commenced this action on November 5, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability and disability insurance benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly evaluated the medical evidence from both treating and non-treating physicians, and that he should have found claimant to be disabled pursuant to the Medical-Vocational Guidelines ("grids"). Upon review of the record, the court concludes that these contentions lack merit, and that the Commissioner's ruling is due to be affirmed.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating

physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

On February 8, 2007, Dr. Glen Archibald, claimant's treating psychiatrist, completed a "Treating Physician's Report of Mental Status" form. He indicated that claimant's mood was "elevated," her affect was "bright," and her speech was pressured. Signs of depression included low mood or intermittent sadness, and signs of anxiety included being more anxious at night than during the day. Claimant denied any hallucinations, delusions, or other abnormal thought processes, as well as any difficulty with attention, concentration, or memory. Finally, claimant's judgment and insight were deemed "fair."[1] With regard to the limits on claimant's ability to do work-related activities, Dr. Archibald stated that claimant would be able to: remember work-like procedures; understand, remember, and execute very short and simple instructions; sustain an ordinary routine without special supervision; make

---

[1] Tr. at 187.

simple work-related decisions; ask simple questions or request assistance; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; and handle her own affairs. On the other hand, claimant would *not* be able to: maintain attention for extended periods of two-hour segments; maintain regular attendance, missing no more than two days of routine duties monthly due to psychiatric impairment; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; or get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes.[2] The vocational expert testified during the administrative hearing that an individual with the limitations assessed by Dr. Archibald would not be able to perform any jobs existing in significant numbers in the national economy.[3]

The ALJ nonetheless found plaintiff to be not disabled, assigning only little weight to Dr. Archibald's assessment. The ALJ reasoned that Dr. Archibald's assessment was internally inconsistent, and was also inconsistent with Dr. Archibald's own treatment notes, the conservative treatment claimant received, and

---

[2]Tr. at 188.
[3]Tr. at 59.

claimant's daily activities. These conclusions were supported by substantial evidence. For example, while Dr. Archibald, on the one hand, stated that claimant's mood was "elevated" and her affect was "bright," he also stated, on the other hand, that she suffered from "low" mood and intermittent sadness. Furthermore, Dr. Archibald first stated that claimant experienced no difficulty with attention, concentration, or memory, but then later stated that claimant could not maintain attention for extended periods of two-hour segments, and she could not work with others without being unduly distracted by them. Finally, Dr. Archibald's treatment notes consistently reflect that claimant responded well to conservative medical treatment, and that her condition either steadily improved or remained stable.[4] Therefore, the ALJ was entitled to discredit Dr. Archibald's functional assessments.

The ALJ also was entitled to give more weight to the opinion of Dr. Robert G. Summerlin, Ph.D., the consultative psychological examiner, and to the opinion of Dr. Robert Estock, the state agency psychiatric consultant. Dr. Summerlin submitted a report of his examination on February 14, 2007. He stated that, during the examination, claimant was

> oriented in regard to person, place, time, and circumstance. There was no evidence of slippage in her attention, concentration, or memory functioning. Her abstract thinking ability, fund of general information, computational skills, and vocabulary were reflective of an individual of above average intelligence and a college education. Her thought

---

[4] *See* Tr. at 170-88, 245-51.

> processes were logical, coherent, and focused; thought content was responsive to questioning. When asked to describe her mood this morning, she said, "Blue." She went on to say that her mood this morning is her typical mood. Her affect was mildly blunted but not inappropriate for the interview circumstance.
>
> As we talked about daily activities, Ms. Brooks reported a stable body weight but a tendency to "want to eat carbohydrates." She reported a variability in sleep time which ranges from four to ten hours per twenty-four hours. She is able to bathe, dress, and groom herself without assistance and performs household chores such as cooking, cleaning, and laundry. She talks on the telephone, drives a vehicle, shops for clothing, visits with family and friends, watches television, listens to the radio, and attends church services. She has several dogs which serve as her hobby.[5]

Dr. Summerlin stated that claimant experienced bipolar disorder, with the most recent episode being depressive, and unspecified relational problems. He assessed her with a GAF score of 60-70, reflecting mild to moderate emotional symptoms affecting personal, social, and occupational functioning. In conclusion, Dr. Summerlin stated:

> Ms. Brooks did not impress me as being an individual who has a psychiatric disorder which would cause her to be unemployable; nonetheless, she reported that she has had difficulty getting along with people with whom she has worked. She also said that the pressure of getting up and being at a job at a specific time causes her to have difficulty with her sleep pattern. Currently, she seems to be comfortable in her non-employment lifestyle.[6]

Dr. Estock noted that claimant was diagnosed with bipolar disorder and major

---

[5]Tr. at 191.
[6]*Id.*

depression.[7] He stated that, as a result of those conditions, claimant would experience mild restriction of her activities of daily living, and moderate difficulties in maintaining social functioning, concentration, persistence, and pace, but no episodes of decompensation, each of extended duration.[8] He also indicated that claimant was not significantly limited in her ability to remember locations and work-like procedures, her ability to understand and remember very short and simple instructions, her ability to carry out very short and simply instructions, her ability to sustain an ordinary routine without special supervision, her ability to make simple work-related decisions, her ability to ask simple questions or request assistance, her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, her ability to be aware of normal hazards and take appropriate precautions, her ability to travel in unfamiliar places or use public transportation, or her ability to set realistic goals or make plans independently of others. She was only moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, her ability to maintain attention and concentration for extended periods, her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, her ability to work in coordination with or proximity to others

---

[7]Tr. at 196.
[8]Tr. at 203.

without being distracted by them, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors, her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and her ability to respond appropriately to changes in the work setting.[9] Dr. Estock offered the following functional capacity assessment:

> Can understand and remember simple instructions. . . Can carryout simply [sic] instructions. . . Can maintain attention and concentration for at least 2 hours . . . Flexible schedule as claimant is expected to miss 1-2 days per month . . . Claimant needs well spaced work area with reduced distractions . . . Claimant will need routine rest breaks, can handle ordinary work pressures . . . Claimant will need non-intensive, casual contact with the general public . . . Supervision should be supportive, tactful and non-confrontational . . . Casual contact with co-workers . . . Changes should be infrequent, well explained.[10]

The vocational expert testified during the administrative hearing that an individual with the limitations assessed by Dr. Estock would be able to perform jobs that exist in significant numbers in the national economy.[11]

      The ALJ assigned great weight to the opinions of both Dr. Summerlin and Dr.

---

[9]Tr. at 207-08.
[10]Tr. at 209.
[11]Tr. at 57-59.

Estock, except for Dr. Estock's assessment that claimant would be expected to miss one or two days a month. The ALJ's decision in this regard was supported by substantial evidence and in accordance with applicable legal standards. The ALJ explained that Dr. Summerlin's and Dr. Estock's assessments were supported by and consistent with the medical record as a whole, including the treatment records of Dr. Archibald, claimant's treating psychiatrist. The ALJ also noted that those doctors' findings were consistent with claimant's education level and activities of daily living. The record supports the ALJ's findings. Accordingly, the court concludes that the ALJ properly considered all of the medical evidence of record, including specifically the opinions of Dr. Archibald, Dr. Summerlin, and Dr. Estock.

Secondly, the court concludes that the ALJ properly considered claimant's disability status pursuant to the Medical-Vocational Guidelines, or "grids." Claimant argues she is disabled according to Medical-Vocational Rule 201.14, which mandates a finding of disability for an individual closely approaching advanced age, with more than a high school education that does not provide for direct entry into skilled work, who has no transferrable skills from her skilled or semi-skilled background, and who is limited to sedentary work as a result of severe medically determinable impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14. Claimant is correct that Rule 201.14 would mandate a finding of disability under those circumstances. The

problem is, however, that the circumstances required by Rule 201.14 are not present in this case. It is true that claimant is an individual closely approaching advanced age, with more than a high school education that does not provide for direct entry into skilled work, and who has no transferrable skills from her skilled or semi-skilled background. Even so, the ALJ did not assess claimant with a residual functional capacity limited to work at the sedentary exertional level. Instead, the ALJ very clearly stated that claimant could perform a full range of work at all exertional levels, and that she suffered only nonexertional impairments.[12] The Medical-Vocational Guidelines, or "grids," do not apply to a claimant who suffers purely nonexertional impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1) ("In the evaluation of disability where the individual has solely a nonexertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in this appendix 2. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). Accordingly, the ALJ did not err in failing to find claimant disabled pursuant to the Medical-Vocational Guidelines. The ALJ was correct in using a vocational expert to determine whether significant numbers of jobs exist in the national economy for an individual with claimant's residual functional capacity

---

[12]Tr. at 17.

and nonexertional impairments.

Consistent with the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 30th day of August 2010.

_____
United States District Judge